UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

In re: )
)
MILNER DISTRIBUTION ALLIANCE, ) Case No. 17-18249 JGR
INC. )
EIN 26-2875563 ) Chapter 11
Debtor. )
)

### AGREED INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

THIS MATTER came before the Court on September 15, 2017 upon the Motion to Approve Agreed Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection ("**Motion**") filed by Milner Distribution Alliance, Inc. (the "**Debtor**") dated September 8, 2017 for entry of Order Authorizing Use of Cash Collateral and Providing Adequate Protection, seeking interim and find authority and approval for:

I. The Debtor to use cash collateral (as such term is defined in the Bankruptcy Code) in which CoBiz Bank d/b/a Colorado Business Bank ("**Secured Lender**") has an interest and the granting of adequate protection to the Secured Lender with respect to such use of its cash collateral and all use and diminution in value of the Pre-Petition Collateral (as defined below); and

II. The granting of certain super priority claims to the Secured Lender and granting Adequate Protection Liens (as defined below) payable from post-petition property of the Debtor's estates.

NOW THEREFORE, based upon the Motion, offers of proof, and the pleadings and other submissions in this Case and, after due deliberation and sufficient cause appearing therefore, the Court FINDS as follows:

### BACKGROUND

A. The Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("**Bankruptcy Code**") with this Court September 5, 2017 (the "Petition Date").

B. The Debtor has continued in the management of its business and possession of its property as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. A creditors committee has not yet been appointed.

C. As of August 30, 2017, the Debtor was indebted to Secured Lender in the approximate amount of $1,305,460.68 and additional fees and expenses owed pursuant to applicable loan documents (hereafter such indebtedness and all accrued but unpaid interest, fees and costs and all other obligations, contingent liabilities, and swap liabilities incurred or existing

as of the Petition Date shall be referred to collectively as the "**Pre-Petition Secured Debt**"). The Pre-Petition Secured Debt was incurred pursuant to, and is evidenced by, various documents, agreements, amendments, modifications, supplements and instruments described on **Exhibit A**, attached hereto and incorporated herein (together, the "**Secured Loan Documents**"). The Secured Loan Documents are voluminous and have not been attached hereto but are available upon request to the Debtor's counsel.

D. The Debtor acknowledges that, pursuant to the Secured Loan Documents, the Pre-Petition Secured Debt is secured by a valid and perfected first priority lien and security interest in the Debtor's property and all proceeds (including insurance) thereof, including Debtor's property identified and described on **Exhibit B** attached hereto and incorporated herein by reference (the "**Pre-Petition Collateral**"), except for the Permitted Encumbrances set forth on Exhibit B.

E. The Debtor acknowledges and agrees that: (a) the Secured Loan Documents are valid and binding upon the Debtor in all respects and continue in full force and effect with respect to the Pre-Petition Secured Debt and the Pre-Petition Collateral; (b) the amount of the Pre-Petition Secured Debt is fully due and payable by the Debtor to Secured Lender as of the Petition Date; (c) Secured Lender's liens and security interests upon the Pre-Petition Collateral are valid, perfected and enforceable in all respects; (d) Secured Lender's pre-petition claims against the Debtor and its estate are hereby allowed and are valid and enforceable in the amount set forth above, together with all pre-petition interest, fees and expenses as provided for in the Secured Loan Documents and are not subject to avoidance or subordination under the Bankruptcy Code or otherwise; (e) the Debtor is unaware of any claims, defenses, setoffs and counterclaims of any kind including, without limitation, those which would affect the amount, validity and enforceability of the Pre-Petition Secured Debt and Secured Lender's liens and security interests upon the Pre-Petition Collateral in any way; and (f) as a result of the foregoing, on the Petition Date, Secured Lender held, and continues to hold, a first-priority perfected security interest in the Pre-Petition Collateral, subject only to senior pre-petition statutory liens, if any, and Permitted Encumbrances.

F. The Debtor is in critical need of funds during the pendency of its chapter 11 case. In order to provide the Debtor with funds to use for its general operating, working capital and such other general corporate purposes as may be permitted by the Court and applicable law, the Debtor has requested that Secured Lender consent to the Debtor's limited use of Secured Lender's cash collateral, as defined in Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), in accordance with the budget ("**Budget**") attached hereto and incorporated herein as **Exhibit C**.

G. The Debtor has an immediate need to use Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll and to satisfy other working capital needs. The ability of the Debtor to obtain sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtor and to a successful reorganization of the Debtor.

H. Without the use of Cash Collateral, the Debtor will not have the funds necessary to pay post-petition payroll, payroll taxes, suppliers, overhead and other expenses.

I. The proposed use of Cash Collateral is necessary and appropriate for the continued operation of the Debtor's businesses and management and preservation of its assets.

J. To the best information, knowledge and belief of the Debtor, the use of Cash Collateral set forth in the Budget is sufficient to fully pay the obligations incurred by the Debtor on and after the Petition Date and for the time period set forth in the Budget.

K. Secured Lender is willing to consent to the use of Cash Collateral in accordance with the Budget and subject to the terms and conditions set forth herein.

L. The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(d). Absent entry of this Order, the Debtor's estate will suffer immediate and irreparable harm. The use of Cash Collateral in accordance with this Order is in the best interest of the Debtor's estate.

M. This matter constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

N. Sufficient and adequate notice of the Motion and the hearing with respect thereto appears to have been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014, and no timely objections were filed.

O. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion.

## ORDER AND JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, effective as of the date set forth below that:

1. <u>Approval</u>. The Motion is hereby granted and approved.

2. <u>Authorization to Use Cash Collateral</u>. The Debtor is hereby authorized to use Cash Collateral for the purpose of preserving and maximizing value of the estate, up to the amounts set forth in the Budget, for the period from the Petition Date until November 30, 2017; <u>provided, however</u>, the Debtor may only use Cash Collateral strictly in accordance with this Order and the Budget and only to the extent that at all times subject to the Borrowing Base set forth in the Pre-Petition Loan Documents. Debtor shall not exceed expense amounts (including, but not limited to Cost of Goods) specified in the Budget by more than five percent (5%) in the aggregate, provided that the Debtor may exceed the expense items set forth in the Budget by more than five percent (5%) but less than ten percent (10%) in the aggregate if, for every dollar of expense in excess of 5 percent of the aggregate Budget in a given month, the Debtor has also realized not less than one dollar of additional revenue above the amount set forth in the Budget from sales during the same given month. The Debtor shall not be allowed to exceed the expenditures set forth in the Budget by 10% in the aggregate unless the Secured Lender consents in writing, in its sole and absolute discretion. Unless the Secured Lender consents in writing, the Debtor shall not

pay any items that are not described in the Budget or that fall outside the categories described in the Budget, but the Debtor shall have discretion in allocating its resources among Budget line items so long as it does not exceed the aggregate permissible variance set forth above and does not make payments on account of professional fees without further Court order approving the same. The Debtor may not use any Cash Collateral to pay any fees, costs or expenses incurred by Debtor or other party to take any adverse action to the Secured Lender, including, but not limited to preparation, initiation or prosecution of any action for avoidance, subordination, recharacterization, disallowance or other claims, objections or causes of action against the Secured Lender

3. <u>Adequate Protection Payments</u>. As part of the adequate protection being provided to Secured Lender for the Debtor's use of Cash Collateral, on before the 10th day of September and on the 10th day of each month thereafter, the Debtor shall pay Secured Lender the sum of $6,000 on account of the Debtor's use of Secured Lender's collateral. Notwithstanding the foregoing, the Debtor and Secured Lender reserve all rights to later determine or assert that such payments are or should be attributed to either principal or interest and in what proportion such payments should be so attributable. Nothing herein shall prevent Secured Lender from seeking additional adequate protection or other relief, nor shall anything hereunder precluded Debtor from opposing any additional adequate protection or other relief sought by the Secured Lender.

4. <u>Additional Adequate Protection</u>. As used herein the term "Cash Collateral Use Amount" includes all cash collateral used by the Debtor after the Petition Date. To provide Secured Lender with the adequate protection required by Sections 361(1), (2) and 363(e) of the Bankruptcy Code:

(a) <u>Replacment Lien:</u> To the extent of the Cash Collateral Use Amount the Secured Lender is hereby granted and provided with shall have a security interest in and lien upon all post-petition inventory, chatter paper, accounts and general intangibles and all proceeds thereof and all proceeds of the Pre-Petition Collateral (the "**Adequate Protection Collateral**").

(b) <u>Further Adequate Protection:</u> To the extent that there is a diminution in value in Secured Lender's Pre-Petition Collateral after the Petition Date that is not offset by the value of the Replacement Lien in Adequate Protection Collateral:

(i) Secured Lender is granted a security interest in and lien upon all pre-petition and post-petition assets of the Debtor. Notwithstanding anything to the contrary herein, the Secured Lender's security interests and liens shall not attach to any and all rights and claims arising under chapter 5 of the Bankruptcy Code.

(ii) <u>Super-Priority Expense Claim</u>. Secured Lender is hereby granted an allowed super-priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code which shall have priority over any and all other indebtedness, liabilities and obligations of the Debtor, now in existence or hereafter incurred by the Debtor, and over all administrative expenses or priority claims of any kind including, without limitation, those specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 364(c), 503(b), 506(c), 507(b), 726, 1113 or 1114 of the Bankruptcy Code; <u>provided however</u>, the Secured Lender's super-priority administrative claim

shall be subordinate to: (i) all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and up to $5,000 for fees, costs and expenses of any chapter 11 or chapter 7 trustee.

(c) <u>Section 552</u>. The Secured Lender's liens upon and security interests in the Pre-Petition Collateral continues in the proceeds and profits of the Pre-Petition Collateral, as provided in section 552(b) of the Bankruptcy Code without exception as further described in the Secured Loan Documents, including without limitation all post-petition inventory and accounts receivable.

5. <u>Termination</u>. Secured Lender's agreement consenting to use of Cash Collateral and Debtor's authority to use Cash Collateral under this Order shall terminate upon the earlier of (i) the occurrence of any Event of Default (as hereinafter defined) or (ii) November 30, 2017.

## EVENTS OF DEFAULT AND REMEDIES

6. <u>Events of Default</u>. Debtor shall be deemed in default under this Order upon the occurrence of: (i) any future Event of Default under the Secured Loan Documents or (ii) any of the following conditions (individually, "Event of Default" and, collectively, "Events of Default") unless such Event(s) of Default is specifically waived in writing by Secured Lender which waiver may be withheld by Secured Lender in its sole discretion and shall not be implied from any other action, inaction or acquiescence by Secured Lender: (a) Debtor's failure to perform in any material respect any of its obligations pursuant to this Order; (b) Debtor's failure to comply with the Budget as described and set forth in paragraph 2 hereof; (c) the appointment of a trustee pursuant to either sections 1104(a)(1) or, 1104(a)(2) of the Bankruptcy Code; (d) the appointment of an examiner with expanded powers; (e) the conversion or dismissal of this case; (f) the entry of an order providing for relief from the automatic stay on any item valued at $25,000 or more; (g) the entry of any order amending, modifying, violating, contradicting, reversing, revoking, staying, rescinding or vacating this Order without the express prior written consent of Secured Lender (which may be withheld in Secured Lender's sole discretion and shall not be implied from any other action, inaction or acquiescence by Secured Lender); (h) Rick and Nancy Milner's failure to make monthly payment of $2,250 on or before the fifth day of each calendar month; or (i) conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code. Debtor acknowledges that any Event of Default shall constitute cause to grant Secured Lender relief from the automatic stay.

7. <u>Default Remedies</u>. Upon the occurrence of any Event of Default (unless waived by Secured Lender in writing in its sole discretion) and the giving of written notice thereof by overnight delivery service or telefax upon Debtor, Debtor's counsel, the United States Trustee and the chairperson and counsel of record for any unsecured creditors committee or if no creditors committee has been appointed, the twenty largest unsecured creditors (but without further notice, hearing or approval of the Court): (a) Debtor's right to continue using Cash Collateral shall immediately cease; (b) Debtor shall segregate and account for any cash in the Debtor's possession, custody or control and hold such cash for the benefit of the Secured Lender, subject to further order of this Court; and (c) all sums owed by Debtor to Secured Lender shall become immediately due and payable. Thereafter Secured Lender shall be entitled to request an expedited

hearing regarding relief from the automatic stay and Debtor hereby consents to such a hearing within ten (10) calendar days or such next time that the Court is available, with respect to vacating of the automatic stay. Debtor acknowledges and agrees that Secured Lender would not have agreed to permit Debtor to use and consume Cash provided in this Order but for the terms and provisions of this paragraph of this Order. Nothing herein shall preclude the Debtor from contesting the existence of an Event of Default.

## GENERAL PROVISIONS

8. <u>Automatic Perfection</u>. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Secured Lender's liens and security interests and Secured Lender shall not be obligated to obtain the execution of, file or record any documents or take any other actions to evidence and effectuate described in the Order. Furthermore, the Second Lender is not required, to create, attach, perfect, or continue Secured Lender's liens and security interests in the Pre-Petition Collateral or Adequate Protection Collateral and the Secured Lender is not required to provide any third parties with notice thereof as otherwise would be required under applicable law. Secured Lender, in its discretion, shall be entitled to file a certified copy of this Order in any filing or recording office in any jurisdiction in which Debtor conducts its businesses or possesses any personal property and, in such event, the filing or recording officer is authorized and directed to file or record such certified copy of this Order.

9. <u>Accounting by Debtor</u>. Within ten (10) calendar days after the entry of this Order, Debtor shall account to Secured Lender for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Pre-Petition Collateral in Debtor's possession or control (collectively, "Cash Proceeds"). All Cash Proceeds in the possession of Debtor or in any accounts of Debtor in financial or other institutions, including any lock box, brokerage or escrow, pledge or depository accounts, as of the Petition Date, shall be deemed proceeds of the Pre-Petition Collateral.

10. <u>Insurance</u>. Debtor is authorized and directed to establish and maintain insurance coverage on the Pre-Petition Collateral for the full replacement value therefore and to cause Secured Lender to be named as a loss payee for the insurance policies. In addition, Debtor shall maintain adequate casualty and general liability insurance and shall name Secured Lender as an additional insured on all insurance policies. The insurance policies and related endorsements shall be in form and substance reasonably acceptable to Secured Lender.

11. <u>Trust Fund Taxes</u>. Debtor is hereby authorized to segregate all trust fund taxes from the debtor-in-possession operating accounts and to pay all post-petition federal and state payroll, withholding, sales, use, personal property, real property, and other taxes and assessments of any kind when due and owing under applicable law in accordance with the Budget. Secured Lender shall not be responsible for the payment of such taxes and assessments under any conditions.

12. <u>Financial Reporting</u>. Unless there is a written waiver by Secured Lender in each instance, Debtor is authorized and directed to provide to Secured Lender the information, reports, schedules, insurance policies and endorsements, and other documents as well as the access, audit,

inspection and other rights which Debtor is required to provide to Secured Lender under the Secured Loan Documents including, without limitation monthly cash reports which detail monthly collections separating collections based upon pre-petition receivables from post-petition receivables. In addition, on a monthly basis, Debtor shall provide Secured Lender with: (a) an accounts receivable aging; and (b) a borrowing base report. In addition, on or befor the 10th of each month, Debtor shall provide Secured Lender with: (a) a monthly Budget comparison showing each line item in the Budget, the amount budgeted, the actual amount and the variance, if any; and (b) a monthly accounts payable aging. In addition, Debtor shall provide Secured Lender with reasonable access to its books, records and physical premises, and shall timely supply Secured Lender with copies of its Schedules, Statements of Financial Affairs, and Monthly Operating Reports contemporaneously with the filing of same.

13. **Reliance Upon Order**. Secured Lender is consenting to Debtor's use of Cash Collateral in reliance on this Order. The liens and security interests granted to Secured Lender hereunder and the rights of Secured Lender pursuant to this Order with respect to the Adequate Protection Collateral shall not in any way be altered, impaired, modified, or otherwise adversely affected.

14. **Survivability**. The provisions of this Order shall inure to the benefit of Debtor and Secured Lender and shall be binding upon Debtor and its estate. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting this case to a chapter 7 case or any order which may be entered confirming or consummating any plan of reorganization of Debtor. The terms and provisions of this Order shall be binding upon and enforceable against any subsequently appointed chapter 11 or chapter 7 trustee.

15. **Secured Loan Documents**. The Debtor will continue to be bound by the terms, obligations and conditions set forth in the Secured Loan Documents except to the extent especially provided otherwise in this order.

16. **Final Hearing; Interim Authorization**. A final hearing on the motion shall be heard before this Court on Oct. 10, 2017 at 3:00 p.m. in Courtroom B, United States Bankruptcy Court, District Of Colorado, 721 19th Street, Denver, CO 80202. The Debtor's authorization as set forth herein to (i) use the Secured Lender's Cash Collateral in accordance with the Budget, shall continue only through the date set forth above for the final hearing on the motion. If there are no timely filed objections, this order shall become a final order after the final hearing on the motion.

17. The Debtor shall promptly mail copies of this Order and notice of the final hearing to Secured Lender, its counsel, the U.S. Trustee, any other secured creditor herein and the 20 Largest Unsecured Creditors herein and which mailing must be accomplished no later than September 19, 2017.

18. This Order may be extended by Stipulation between the Debtor and Secured Lender on substantially the same terms, without further notice to Creditors.

19. <u>Notice</u>. Any notices required or allowed under this Order shall be given by regular first class mail, hand delivery, or fax as follows:

If to Debtor:  Richard Milner
Milner Distribution Alliance, Inc.
738 Synthes Ave.
Monument, CO 80132-8102
Telephone:
Facsimile:

with a copy to:

Jeffrey A. Weinman
730 17th Street, Suite 240
Denver, CO 80202
Telephone: (303) 572-1010

If to Secured Lender:
Nancy Snyder
CoBiz Bank d/b/a/ Colorado Business Bank
1099 18th Street, Suite 3000
Denver, CO 80202
Telephone: (303) 312-3411
E-Mail: nsnyder@cobizbank.com

with a copy to:

James T. Markus, Esq.
Markus Williams Young & Zimmermann LLC
1700 Lincoln Street, Suite 4550
Denver, CO 80203
Telephone: (303) 830-0800
Facsimile: (303) 830-0809
E-Mail: jmarkus@markuswilliams.com

Dated: __September 15__, 2017.

BY THE COURT

_____
United States Bankruptcy Judge

AGREED TO FORM AND SUBSTANCE:

**MILNER DISTRIBUTION ALLIANCE, INC.**

By: /s/ *Jeffrey A. Weinman*
Jeffrey A. Weinman, #7605
730 17th Street, Suite 240
Denver, CO 80202
Telephone: (303) 572-1010
Facsimile: (303) 572-1011
jweinman@weinmanpc.com

**COLORADO BUSINESS BANK**

By:/s/ *James T. Markus*
James T. Markus
Markus Williams Young & Zimmermann LLC
1700 Lincoln Street, Suite 4550
Denver, CO 80203
Telephone: (303) 830-0800
Facsimile: (303) 830-0809

# EXHIBIT A
# LIST OF SECURED LOAN DOCUMENTS

1. Promissory Note dated August 29, 2013. Original principal amount of $1,500,000.
2. Commercial Security Agreement dated August 29, 2013.
3. Business Loan Agreement dated August 29, 2013.
4. Corporate Resolution To Borrow/Grant Collateral dated August 29, 2013
5. Landlord's subordination agreements dated August 29, 2013
6. Change in Terms Agreement dated December 20, 2013. Increasing principal amount from $1,500,000 to $2,000,000
7. Business Loan Agreement dated December 20, 2013.
8. UCC Financing Statement filed with the Colorado Secretary of State on September 5, 2013, Document No. 20132077795.
9. Commercial Guaranty executed by Bret Milner in favor of Colorado Business Bank dated August 29, 2013.
10. Commercial Guaranty executed by Richard Milner in favor of Colorado Business Bank dated August 29, 2013.
11. Commercial Guaranty executed by Nancy Milner in favor of Colorado Business Bank dated August 29, 2013.
12. Loan Modification Agreement dated March 1, 2016.
13. Amended and Restated Promissory Note dated March 1, 2013. Original principal amount of $1,600,000.
14. Second Loan Modification Agreement and Waiver of Default dated December, 2016.

## EXHIBIT B
## PRE-PETITION COLLATERAL AND PERMITTED ENCUMBRANCES

"Pre-Petition Collateral" includes the following property, whether now owned or hereafter acquired, whether now existing or hereafter arising, including all inventory, equipment, furniture, chatter paper, accounts and general intangibles and

A. All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral descrived herein whether added now or later.

B. All products and produce of any of the property.

C. All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other dispostion of any of the property described above.

D. All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described above, and sums due from a third party who had damanged or destroyed the Collateral or from that party's insurer, wehter due to judgment, settlement or other process.

E. All records and data relating to any of the property decribed above, whether in the form of a writing, photograph, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

The following security interests are the "Permitted Encumbrances":

A. The security interest of Conestoga Equipment Finance Corp. in

(1) HAB-8000-W Exxpert Auto Blocker (White), Serial# 8AB00W14A0007; (1) HPE-7000ND Excelon XQ No Drill 115V, Serial# 7PE0ND13D0010; (1) Water Box Assembly with Accessories 115V

B. The security interest of Hewlett- Packard Financial Services Company in

All equipment and software now or hereafter acquired, which Secured Party has leased to or financed for Debtor,
including, but not limited to, computer, printing, imaging, copying, scanning, projection and storage equipment, any and all
related peripherals, attachments, accessions, additions, general intangibles, substitutions, supplies, replacements, and
any right, title or interest in any license for any software used to operate or otherwise installed in any of the foregoing, and
products and proceeds of all of the foregoing (including insurance proceeds).

{Z0184444/1 }

**EXHIBIT C**
**BUDGET**

[See attached budget]

{Z0184444/1}

MAXX Sunglasses- Projections
Monthly Projections for 2017

| | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | Total |
|---|---|---|---|---|---|---|---|
| Revenue From Operations | 280,000 | 250,000 | 180,000 | 180,000 | 250,000 | 300,000 | 1,440,000 |
| Cost of Goods Sold | | | | | | | |
| Commissions Outside Reps/Comm | 1,900 | 1,750 | 1,500 | 1,500 | 1,750 | 2,000 | 10,400 |
| Postage & Delivery | 8,400 | 7,500 | 5,400 | 5,400 | 7,500 | 9,000 | 43,200 |
| Stands | 2,100 | 1,875 | 1,350 | 1,350 | 1,875 | 2,250 | 10,800 |
| Product for Sale | 84,000 | 75,000 | 54,000 | 54,000 | 75,000 | 90,000 | 432,000 |
| Supplies/Boxes | 5,600 | 5,000 | 3,600 | 3,600 | 5,000 | 6,000 | 28,800 |
| Miscellaneous Expense | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| Total COGS | 102,500 | 91,625 | 66,350 | 66,350 | 91,625 | 109,750 | 528,200 |
| Gross Profit | 177,500 | 158,375 | 113,650 | 113,650 | 158,375 | 190,250 | 911,800 |
| | | | | | | | |
| Operating Expenses | | | | | | | |
| Advertising & Promotion | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 | 10,000 | 28,000 |
| Computer Services | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| Cleaning Services | 400 | 400 | 400 | 400 | 400 | 400 | 2,400 |
| Credit Card Processing | 5,600 | 5,000 | 3,600 | 3,600 | 5,000 | 6,000 | 28,800 |
| Dues and Subscriptions | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 10,800 |
| Equipment Rental | 5,427 | 5,427 | 5,427 | 5,427 | 5,427 | 5,427 | 32,562 |
| Bank Fees | 750 | 750 | 750 | 750 | 750 | 750 | 4,500 |
| Insurance - Health | 2,839 | 2,839 | 2,839 | 2,839 | 2,839 | 2,839 | 17,034 |
| Insurance - General | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |
| Insurance - WC | 680 | 680 | 680 | 680 | 680 | 680 | 4,080 |
| Licenses and Permits | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Meals & Entertainment | 100 | 100 | 100 | 100 | 100 | 100 | 600 |
| Miscellaneous | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Office Supplies | 500 | 500 | 500 | 500 | 500 | 500 | 3,000 |
| Bad Debts | 2,800 | 2,500 | 1,800 | 1,800 | 2,500 | 3,000 | 14,400 |
| Freight | 16,800 | 15,000 | 10,800 | 10,800 | 15,000 | 18,000 | 86,400 |
| Samples | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 2,500 | 8,500 |
| Payroll | 94,000 | 75,000 | 54,000 | 54,000 | 75,000 | 90,000 | 442,000 |
| Professional/Legal Fees | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 24,000 |
| Accounting Firm | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 6,000 |
| Rent | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 45,000 |
| Telephone | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 6,600 |
| Utilities | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 13,500 |
| Total Operating Expense | 155,246 | 133,546 | 108,246 | 108,246 | 141,546 | 162,346 | 805,176 |
| Net Profit | 22,254 | 24,829 | 7,404 | 7,404 | 16,829 | 27,904 | 106,624 |

CASH FLOW PROJECTIONS MONTHLY 2016

| | Sep-17 | Oct-17 | Nov-17 |
|---|---|---|---|
| Beginning Cash Balance | 5,000 | 25,804 | 31,763 |

Confidential